In the Matter of the Application of Dwight BROWN, for a Decree Vacating a Portion of Oak Street and Third Street in Noble, Oklahoma, Adjoining Block Fifty-Nine (59), of Original Town of Noble, Cleveland County, Oklahoma.

No. 54124.

Court of Appeals of Oklahoma, Division No. 2.

Feb. 9, 1982.

As Corrected Feb. 17, 1982.

Release for Publication by Order of Court of Appeals March 12, 1982.

1. *Bd. of Ed. of Ind. School Dist. No. 48 v. Rives,* Okl., 531 P.2d 335 (1975); *Ind. School Dist. No. 4 v. St. Bd. of Ed.,* Okl., 451 P.2d 684 (1969).

2. *Id.*

3. 59 O.S.1971 §§ 1327 and 1328.

4. *Lorentz et al. v. State of Okla.,* Okl., 531 P.2d 332 (1975); *Boice v. State of Okla.,* Okl., 473 P.2d 241 (1970).

Roger O. Housley, Pence, Welch & Housley, Norman, for appellant.

Terry Guy Shipley, Noble, for appellee.

BOYDSTON, Presiding Judge.

Property owner (Owner) appeals from judgment denying his application to vacate unused sections of two city street easements in the City of Noble, Oklahoma (City).

Owner's predecessor in title inadvertently built part of several structures (in most cases small homes) several feet over the street easement. Owner's property is a triangle-shaped tract in a residential area bounded on one side by Oak Street and on another by Third Street.[1] The third tract boundary is a major highway. After Owner bought the tract a survey revealed a boundary discrepancy which has existed for up to 20 years. To correct this, Owner asked the court to vacate 17 feet of easement adjacent to Third Street and 9 feet of easement adjacent to Oak Street. This amounts to a strip of land running the length of each block and allows enough space to accommodate the existing structures plus one extra foot. Without relief Owner's title is perpetually defective. The cost of removing these structures destroys the investment.

1. Third Street was originally platted as Main Street and the two names were used interchangeably at trial. Judging from the photos the name "Main Street" appears to have been very unprophetic on the part of the original platters.

City's streets were platted in Indian Territory days. For the past 20 years both streets have been hard-surfaced roads (they appear to be rolled chat and asphalt) which are about 16 feet wide. The photo exhibits show other abutting owners on both sides have casually used the portions of the easements which City has failed to use. The unused portions of both easements are subject to the usual utility easements, but all such licensees formally disclaimed any interest except City, which introduced a line drawing to prove it has a sewer main "somewhere" between Owner's property line and the edge of the street—nothing more precise was offered.

Over objection, City also introduced testimony of City Clerk that there was an informal policy to allow commercial zoning to property owners in the area upon request. This policy has never been formally adopted by City. The thrust of this evidence is that if sometime in the future the residential area becomes commercial Third Street might have to be widened to use the full 100 foot easement. The photos show the streets are in an outlying, modest residential area.

On appeal, Owner raises the following issues:

(1) Trial court improperly admitted City Clerk's testimony regarding the sewer main and the unofficial policy;

(2) 11 O.S.1978 Supp. §§ 42–101 *et seq.* permits the court to vacate a portion of an unused platted street; and

(3) City, by reason of past action in similar cases, is estopped to take an inconsistent position regarding the court's right to vacate a portion of a platted street.

The latter issue, not developed at trial, need not be discussed; it has relevance only to the extent that it shows a pattern of past policy and then only to the extent it implies arbitrary application of the policy—in other words, discrimination.

## I

■ Both parties present supportable argument concerning the admissability of City Clerk's testimony. We believe the evidence is admissible under the limited category of "for whatever it is worth," and its reception is within the discretion of a court sitting in equity. However, in view of the trial court's ruling, we find its probative value was given undue prominence. Until it has been legislatively approved, an "unofficial policy" is nothing more than a sentiment or attitude of one or more members of the governing body.

It is too indefinite to provide a basis for effective uniform administrative enforcement and forms no basis for meaningful judicial application or review. It is simply background information which the court, in its equitable function, may or may not permit into evidence. It cannot form the very basis for decision, as appears to be the case here.

## II

■ We construe 11 O.S.1978 Supp. §§ 42–101 *et seq.* to specifically permit the court, under proper circumstances, to vacate all or "some part thereof ...." of unused platted streets and alleys where the petitioner's proof justifies such action. We hold a title flaw caused by inadvertent encroachment on city streets or alleys is a *prima facie* valid ground to invoke the broad, remedial, equitable power of the court. This right of vacation is limited to cases where the action taken "will not injuriously affect the rights of owners of other portions of the plat or the public." 11 O.S.1978 Supp. § 42–104(B). Based on this criterion we hold the court abused its discretion by its outright order of denial.

From a public standpoint, the only potentially valid objection raised by City is that the sewer main might be included in the disputed unused easement. The engineer's map shows the location of the line but only in general. If it is under the disputed tract, there might be valid reason to deny the application. However, at this point there is not enough evidence to deny the application and, on the other hand, there is a strong probability there is no impediment to granting it. We therefore send this case back to

trial court for further evidentiary hearings to determine the exact location of the sewer line.

Five area property owners specifically object to the application. Their objection is, essentially, it is unfair for Owner to get "free land." We do not consider this objection, by itself, to be "injurious" within the contemplation of the statute.

### III

The court sitting in equity has wide latitude in resolving disputes such as this. This type case is demonstrative of the specialized judgments traditionally permitted to resolve unique factual situations. Here the court should call for precise testimony in order to determine the exact location of the sewer main. If the evidence indicates it is necessary to locate the main by trial and error excavation (not an unusual practice in small communities) the cost could be taxed to Owner. Even if the strip interfered with the sewer main, it could be in Owner's interest to pay the cost of relocation.

Further, the court heard and saw the protesters and is always the best judge of whether some accommodation can be made for their position, particularly where it can be done without arbitrarily denying Owner his legitimate right to relief. If the court is so inclined, we see no reason why it could not limit the vacated strip to only that space actually occupied by the buildings plus one foot. Further, we find the statutory power of the court to vacate inferentially grants the power to evoke less extreme measures to effect judicial solutions to such problems. The grant could be limited to a permanent license "for so long as the same shall be occupied by the existing structure." Then, if any one of the structures is later destroyed or removed, and if indeed the neighborhood evolves to commercial use, these encroaching garages and modest homes will be worth less as homes; and, upon their removal the street easement could revert to its original, uniform 100 foot width.

Judgment reversed, case remanded to trial court for further proceedings consistent with this opinion. Costs taxed against City.

BACON and BRIGHTMIRE, JJ., concur.